## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES BISPO,<br><br>      Plaintiff,<br><br>   -against-<br><br>ANCHIANO THERAPEUTICS LTD., NEIL COHEN, RUTH ALON, ISAAC KOHLBERG, and STANISLAV POLOVETS,<br><br>      Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff James Bispo ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought by Plaintiff against Anchiano Therapeutics Ltd. ("Anchiano" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Anchiano, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Anchiano and Chemomab Ltd., ("Chemomab"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On December 14, 2020, Anchiano entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which CMB Acquisition Ltd. ("Merger Sub"), an Israeli limited company and wholly-owned subsidiary of Anchiano, will merge with and into Chemomab,

with Chemomab surviving as a wholly-owned subsidiary of Anchiano, and ordinary shares, represented by Anchiano American Depositary Shares ("ADS"), will be issued to the Chemomab securityholders at the effective time of such merger, or the Merger. Under the final exchange ratio ("Exchange Ratio"), immediately following the Merger (but without giving effect to the Financing described below), Chemomab's securityholders are expected to own approximately 90% of Anchiano's share capital on a fully diluted basis and Anchiano's securityholders are expected to own approximately 10% of Anchiano's share capital on a fully diluted basis. The Exchange Ratio formula is based on a $135.0 million valuation for Chemomab and a $15.0 million valuation for Anchiano.

3.      In addition, each shareholder of Chemomab will be issued a Chemomab Warrant, which may be exercisable for Anchiano ordinary shares to be represented by ADSs in certain circumstances, pro rata based on the Chemomab shareholders' respective holdings of Chemomab's share capital immediately prior to the closing of the Merger. The Chemomab Warrant is exercisable if (i) a claim is filed within one year after the closing of the Merger for contingent liabilities of Anchiano related to the pre-closing period as described in the Merger Agreement, and (ii) a judgment or settlement is paid within five years after the closing of the Merger in connection with such claims.

4.      On January 13, 2021, in order to convince Anchiano shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading registration statement on Form S-4 with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

5.      In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) Defendant Cohen's unique interest in the Proposed Merger;

(ii) the conflicts of interest facing Oppenheimer & Co., Inc. ("Oppenheimer"), the financial advisors employed by the Company; and (iii) the financial forecasts, estimates and underlying values and inputs utilized by Oppenheimer in valuations of Anchiano and Chemomab.

6.    The special meeting for Anchiano stockholders to vote will be scheduled in the coming weeks (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

7.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Anchiano's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of disclosure.

## JURISDICTION AND VENUE

8.    This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.    The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

10.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

11.     Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because the Company's principal executive office is located in this District at 1350 Avenue of the Americas New York, New York 10019 and Defendants are found or are inhabitants or transact business in this District.

## PARTIES

12.     Plaintiff is, and at all relevant times has been, a holder of Anchiano ADS.

13.     Defendant Anchiano is a limited liability company established in the State of Israel. Anchiano is a biopharmaceutical company dedicated to the discovery, development, and commercialization of novel targeted therapies to treat cancer in areas of significant clinical need located in Cambridge, MA. Anchiano is developing small-molecule pan-mutant-RAS inhibitors and inhibitors of PDE10 and the b-catenin pathway.  The Company's principal executive office is located at One Kendall Square, Building 600, Suite 6-106, Cambridge, MA.  Anchiano's American Depository Shares ("ADS") are traded on the NASDAQ Capital Markets under the trading symbol ANCN.

14.     Individual Defendant Neil Cohen, has served as a member of Anchiano's board of directors since April 2020 and as Anchiano's Chief Executive Officer since October 2020.

15.     Individual Defendant Stanislav Polovets, has served as Chairman of the Board and as a director at all relevant times.

16.     Individual Defendant Ruth Alon has served as a director at all relevant times and was the Chief Executive Officer until October 2020.

17.     Individual Defendant Isaac Kohlberg has served as a director at all relevant times.

18.     The Individual Defendants referred to in ¶¶ 14-17 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Anchiano they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

19.     Anchiano is a preclinical biotechnology company committed to discovering and developing new cancer therapies designed to target the products of mutated genes that are drivers of human malignancies. These therapies are called small molecule targeted therapies. Anchiano has obtained the option to license small molecule technologies that it believes it can develop into product candidates that can deliver novel treatments for cancer patients whose cancers are caused by mutated genes and for whom existing therapies are limited in effectiveness.

20.     Chemomab is a clinical-stage biotech company focusing on the discovery and development of innovative therapeutics for fibrosis-related diseases with high unmet need. Based on the unique and pivotal role of the soluble protein CCL24 in promoting fibrosis and inflammation, Chemomab developed CM-101, a monoclonal antibody designed to bind and block CCL24 activity. CM-101 has potential to treat multiple severe and life-threatening inflammatory and fibrotic diseases, and is currently undergoing clinical development for the orphan diseases, Primary Sclerosing Cholangitis ("PSC") and Systemic Sclerosis ("SSc"). In October 2020,

Chemomab initiated the SPRING Study, its first phase 2 clinical trial evaluating the safety and efficacy of CM-101 in patients diagnosed with PSC. Chemomab is currently a privately held company supported by leading healthcare-focused investors including OrbiMed and Peter Thiel.

21.     On December 15, 2020, Anchiano issued a press release announcing the Proposed Merger, which states in relevant part:

### Anchiano Therapeutics and Chemomab Announce Entry Into Definitive Merger Agreement

Merger brings lead compound CM-101, a first in class anti-CCL24 antibody into advanced clinical development for fibrosis-related diseases with significant unmet medical need

Concurrent PIPE financing to be used to fund clinical trials for CM-101 in fibrotic indications, focusing on two rare diseases and backed by leading healthcare-focused investors OrbiMed and Peter Thiel

CAMBRIDGE, Mass. and TEL-AVIV, Israel, December 15, 2020 (GLOBE NEWSWIRE) – Anchiano Therapeutics Ltd. ("Anchiano") (Nasdaq: ANCN), a preclinical biopharmaceutical company, and Chemomab Ltd. ("Chemomab"), a clinical-stage biotech company focusing on the discovery and development of innovative therapeutics for fibrosis-related diseases with high unmet need, announce their entry into a definitive merger agreement pursuant to which the shareholders of Chemomab would become the majority holders of the combined company. The proposed merger will create a public company focused on advancing Chemomab's lead product, CM-101. Shareholders of both companies holding shares sufficient to approve the merger have entered into shareholder support agreements with the respective companies in support of the transaction.

Concurrent with the merger, Chemomab seeks to complete a PIPE financing to advance CM-101 into Phase 2 clinical trials in rare fibrotic indications, as well as to further develop Chemomab's earlier-stage pipeline. Initial efforts will focus on orphan indications including primary sclerosing cholangitis (PSC) and systemic sclerosis (SSc), which are inflammatory-fibrotic diseases affecting multiple organs such as the liver (in PSC) and skin and lungs (in SSc). Both indications have a significant unmet need, with patients suffering from debilitating symptoms and no FDA-approved disease modifying treatment options. The combined company also expects to advance CM-101 into a Phase 2a trial to evaluate the antibody's anti-fibrotic effect in patients diagnosed with non-alcoholic steatohepatitis (NASH).

Stan Polovets, chairman of the board of Anchiano, stated, "Following a comprehensive review of strategic alternatives, Anchiano's board of directors has

concluded that the proposed transaction with Chemomab is in the best interest of our shareholders. Chemomab's CM-101 has demonstrated positive clinical results, with a novel mechanism of action that has potential to become an important option for patients with debilitating fibrotic diseases. We intend to hold a special meeting of Anchiano's shareholders in the first quarter of 2021 to vote on this merger."

Dr. Adi Mor, co-founder and chief executive officer of Chemomab, added, "Our lead compound, CM-101, has shown very positive safety and anti-fibrotic biomarker activity in a Phase 1b study, and with the antibody advancing into Phase 2 trials in two orphan fibrotic indications, we believe it is the right time in our lifecycle to move into the public equity markets. We are excited about the next chapter of growth for Chemomab, and the ability to bring the important effects of CM-101 through clinical development and to patients."

Stephen Squinto, Ph.D., chairman of Chemomab and executive partner at OrbiMed, Chemomab's leading investor, commented, "There is an urgent need for treatments that address fibrotic diseases such as PSC and SSc, and the promising early data for CM-101 suggest that this compound has potential to become a meaningful therapeutic option for patients suffering from these conditions. I am pleased with the progress that the Chemomab team has made so far, and we look forward to a productive year in 2021 with significant anticipated advancement of our clinical programs."

Upon closing of the transaction, the combined company will assume the name "Chemomab Therapeutics Ltd." and will be led by Chemomab's management team, headed by its co-founder and chief executive officer, Adi Mor, Ph.D. Neil Cohen, chief executive officer of Anchiano, will join the board of Chemomab at closing.

**Summary of the Transaction**

Current Chemomab shareholders and holders of Chemomab equity awards will convert 100% of their existing equity interests into securities of the combined company. On a pro forma basis and based upon the number of Anchiano securities to be issued in the merger, current shareholders of Chemomab will own approximately 90% of the combined company upon closing, prior to the additional PIPE financing transaction. The actual allocation will be subject to adjustment based on Anchiano's cash balance at the time of closing and the amount of the additional PIPE financing consummated at the closing of the merger. Additional information about the transaction will be provided in a Current Report on Form 8-K that will be filed by Anchiano with the Securities and Exchange Commission ("SEC") and will be available at www.sec.gov.

The proposed transaction has been approved by the boards of directors of both companies. The merger is subject to the approval of Anchiano's shareholders at a special meeting of shareholders, which is expected to occur in the first quarter of 2021, along with the satisfaction or waiver of other customary conditions.

\* \* \*

Oppenheimer & Co., Inc. is acting as financial advisor to Anchiano for the transaction and Goldfarb Seligman and Cooley LLP are serving as legal counsel to Anchiano. Ronen Bezalel and Shachar Hadar of Meitar, and Greenberg Traurig LLP, are serving as legal counsel to Chemomab, and Oppenheimer & Co., Inc. is acting as placement agent for the PIPE financing.

## II.    The Registration Statement Omits Material Information

22.    On January 13, 2021, Defendants filed the materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

A.    <u>The Misleading and Incomplete Information Regarding Defendant Cohen's Interest in the Proposed Merger</u>

23.    The Registration Statement omits material information about Defendant Cohen, his relationship with one of Anchiano's largest shareholders and the compensation he will receive only if the Proposed Merger is consummated.

24.    The Registration Statement discloses that Defendant Cohen is a venture partner at Shavit Capital. The Registration Statement further discloses that certain of the Shavit Capital Funds hold 8,868,546 shares of Anchiano ADS, representing 23.90%. Apparently based upon this share ownership and Cohen's status at Shavit Capital, the Registration statement states that Cohen will be a director of the combined company following consummation of the Proposed Merger. The Registration statement, however, does not state the compensation Cohen will receive from

either Shavit Capital or the combined company if the Proposed Merger is consummated.

25.     This information regarding Cohen is material to Anchiano shareholders in evaluating Cohen's recommendation and role in agreeing to the Proposed Merger.  The History of Strategic Alternatives Discussions and Significant Corporate Events for Anchiano section of the Registration Statement discloses that in July 2020, when Defendant Alon was still the CEO, Anchiano, with Oppenheimer's assistance identified 37 companies, including Chemomab, as potential merger partners.  According to the Registration Statement, Anchiano and the Board then engaged in more extensive discussions with nine of the identified companies, not including Chemomab.  By the end of September 2020, discussions began between Oppenheimer, Cohen and representatives of Chemomab.   By October 20, 2020, Cohen was appointed Chief Executive Officer of Anchiano and became the focus of all negotiations with Chemomab.

26.     The Registration Statement, however, fails to describe Cohen's compensation or other incentives from Shavit Capital, one of Anchiano's largest shareholders, or the compensation he will be paid to remain on the board of the combined company.  Moreover, the Registration Statement fails to disclose any reason for Cohen to suddenly be promoted to CEO when negotiations with Chemomab commenced.  Due to Cohen's role in negotiating the merger, his timely elevation to the position of CEO, his status as a venture partner at Shavit Capital, and his continued position and compensation as a director of the combined company, this information is material to Anchian shareholders in evaluating the Proposed Merger.  The failure to disclose this information renders the History of Strategic Alternatives Discussions and Significant Corporate Events for Anchiano section of the Registration Statement false and misleading.

B.      The Misleadingly Incomplete Information Regarding the Financial Advisors

27.     The Registration Statement omits material information about the financial advisors, their relationships, and the compensation they will receive only if the Proposed Merger is consummated.

28.     The Registration Statement states that Anchiano paid Oppenheimer a retainer fee of $75,000 (creditable against the opinion fee), and agreed to pay Oppenheimer $450,000 (less the credit for the retainer) for its opinion in connection with the Proposed Merger, and has agreed to pay Oppenheimer an additional fee of $500,000 upon the consummation of the Proposed Merger, for a total fee of $950,000.

29.     The Registration Statement further states that with the consent of the Anchiano Board, Oppenheimer was also engaged as a private placement agent for Chemomab in connection with a private investment of equity securities for Chemomab, the closing of which is contingent on the closing of the Merger and for which Chemomab will pay Oppenheimer a customary private placement fee.  The Registration Statement, however, fails to state the amount of compensation Oppenheimer will receive for serving as Chemomab's private placement agent in a transaction that is entirely contingent upon the consummation of the Proposed Merger.

30.     Disclosure of any relationship or compensation received or to be received as a result of the relationship between a financial advisor and the company it advises, or its related affiliates, is required pursuant to 17 C.F.R. § 229.1015(b)(4). Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. It is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed

transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know what important economic motivations that the advisor might have.

      C.    The Misleadingly Incomplete Financial Projections and Valuation Information

31.    The Registration Statement describes Oppenheimer's fairness opinion and the various valuation analyses performed in support of their opinion. Defendants concede the materiality of this information in citing Oppenheimer's fairness opinion and their valuation analyses among the "material" factors considered in recommending the Proposed Merger. S-4, p. 97 ("The Anchiano board of directors considered the financial analysis prepared by Oppenheimer and the opinion delivered to the Anchiano board of directors (in its capacity as such) by Oppenheimer on December 14, 2020, and based upon and subject to the assumptions made, procedures followed, matters considered, and qualifications and limitations on the review undertaken by Oppenheimer in preparing the opinion, as to the fairness, from a financial point of view, of the Exchange Ratio in the Merger pursuant to the Merger Agreement to Anchiano,"). However, the summary of Oppenheimer's fairness opinion and analyses provided in the Registration Statement fails to include key forecasts, estimates, inputs and assumptions underlying the analyses. Without this information, as described below, Anchiano shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Oppenheimer's fairness opinion in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Anchiano's shareholders.

32.    First, the Registration Statement omits critical financial forecasts and estimates related to Chemomab prepared by the management of Anchiano and approved for Oppenheimer's

use by Anchiano.  The Registration Statement demonstrates these forecasts and estimates existed and were readily available to be disclosed (together the "Omitted Projections").  Defendants chose to disclose only the summary of Oppenheimer's financial analyses, rather than the underlying forecasts and estimates. The inclusion of these financial forecasts and estimates is necessary for Anchiano stockholders to ensure that the Exchange Ratio is premised on projections that were reasonably prepared.

33.     Moreover, in summarizing the Selected Public Companies Analyses, Oppenheimer identified 15 selected publicly traded fibrotic disease companies with market capitalizations between $50 million and $2 billion, reviewed the enterprise values of these selected public companies, and calculated fully-diluted equity values.  Based upon this analysis Oppenheimer claimed to observe an overall low to high ranges of enterprise values for the selected companies were $15.4 million to $1.5184 billion (with a median of $187 million).  Oppenheimer then claims to have applied the median selected ranges of the enterprise values derived from the selected companies, after adding Chemomab's estimated fiscal year, or FY, 2020 ending cash balance of $11.6 million (based on internal estimates provided by Chemomab management, as directed by us to be used), as adjusted by +/- 10%, to derive an equity value reference range of $179.9 million to $217.3 million for Chemomab. Merely providing a summary of the process and the results, without providing a table to the enterprise values observed and the estimates provided by Chemomab without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate values and estimates, or, instead, applied unreasonably low ranges in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of the Selected Public Companies Analysis provided in the Registration Statement misleading.

34.     Similarly, in summarizing the Selected Transactions Analysis the Registration Statement states Oppenheimer reviewed publicly available information related to eight selected merger and acquisition transactions announced since January 1, 2014.  Oppenheimer then claims to have reviewed enterprise values, calculated as the purchase prices paid at closing for the target companies' equity in the selected transactions plus the target companies' debt, less cash and cash equivalents.  From this analysis Oppenheimer claims to have observed an overall low to high range of total enterprise value observed for the selected transactions of $5 million to $500 million (with a median of $300.3 million).  Oppenheimer then applied median ranges of the enterprise values derived from the precedent M&A transactions, after adding Chemomab's estimated FY 2020 ending cash balance of $11.6 million (based on internal estimates provided by Chemomab management, as directed by us to be used), as adjusted by +/- 10%, to derive an equity value reference range of $281.9 million to $341.9 million.  Again, however, the Registration Statement fails to disclose the basis for the selection of the specific transactions, the enterprise values observed or Chemomab's internal estimates, in other than conclusory form, upon which this analysis is premised.  Accordingly, the omission of this material information renders the summary of the Selected Transactions Analysis provided in the Registration Statement misleading.

35.     Likewise, the Discounted Cash Flow Analysis prepared by Oppenheimer for Chemomab, the Registration Statement fails to disclose the following key information: (i) the standalone after-tax free cash flows that Chemomab management forecasted to be generated during the calendar years ending December 31, 2021 through the calendar year ending December 31, 2035; (ii) the inputs and assumptions underlying the discount rate ranges utilized; and (iii) the terminal values calculated in each analysis.

36.     These key inputs are material to Anchiano shareholders, and their omission

renders the summary of the Discounted Cash Flow Analysis incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

37.    The free cash flow projections are necessary for stockholders to ensure that the projections were reasonably prepared. Unlike poker where a player must conceal his unexposed cards, the object of a Registration Statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a Registration Statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose

half-truths. Accordingly, Defendants have disclosed some of the projections provided to and relied upon by the Board but failed to disclose the Omitted Projections. This omission renders the Discounted Cash Flow Analysis, Chemomab's financial picture, and the recommendation of the Board provided in the Registration Statement misleadingly incomplete.

38.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42.     The omission of information from a Registration Statement will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

43.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) Defendant Cohen's unique interest in the Proposed Merger; (ii) the conflicts of interest facing Oppenheimer as the financial advisors employed by the Company; and (iii) the financial forecasts, estimates and underlying values and inputs utilized by Oppenheimer in valuations of Anchiano and Chemomab.

44.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

45.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most

if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Registration Statement states that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided them.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

47.     Anchiano is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

48.     The misrepresentations and omissions in the Registration Statement are material

and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Anchiano's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Anchiano within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or knowledge of the misleadingly incomplete statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the material statements that Plaintiff contends are incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

53.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT III**

### **Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure**

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     By virtue of their role as directors and/or officers of the Company, the Individual

Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

59.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

60.     The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

61.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Anchiano shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 3, 2021                         **MONTEVERDE & ASSOCIATES PC**

**OF COUNSEL:**                                 */s/ Juan E. Monteverde*
                                                Juan E. Monteverde (JM-8169)
**KAHN SWICK & FOTI, LLC**                      The Empire State Building
Michael J. Palestina                            350 Fifth Avenue, Suite 4405
1100 Poydras Street, Suite 3200                 New York, NY 10118
New Orleans, LA 70163                           Tel: (212) 971-1341
Tel.: (504) 455-1400                            Fax: (212) 202-7880
Fax: (504) 455-1498                             Email: jmonteverde@monteverdelaw.com
E-mail: Michael.Palestina@ksfcounsel.com

*Attorneys for Plaintiff*                        *Attorneys for Plaintiff*